IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISSATOU BARRIE, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-5320 |
| | : | |
| GREAT NORTHERN INSURANCE | : | |
| COMPANY, et al., | : | |
| Defendants | : | |

M E M O R A N D U M

**STENGEL, J.**                                                                                   **August 28, 2008**

Defendants have each filed motions for summary judgment in this breach of contact and bad faith case against a moving company and two insurance companies, arising out of plaintiff's alleged loss of her jewelry collection during a move of her belongings. Based on the following discussion, I will grant defendants motions in their entirety.[1]

**I.     BACKGROUND**[2]

A.     Fritz Moving Company and Plaintiff's Move

On February 26, 2005, plaintiff moved from her apartment at 306 Mercer Street, D12, in Reading, Pennsylvania to a house at 4700 Dunham Drive, Reading, Pennsylvania.

---

[1] In her Memorandum of Law in Opposition to Summary Judgment, plaintiff concedes withdrawal of all claims against defendant Prudential. I will therefore grant the Motion for Summary Judgment of Prudential Insurance Brokerage, Inc., and enter judgment in favor of Prudential. (See Pl.'s Opp'n Br. 12, Document #65.)

[2] I have viewed the facts in the light most favorable to the plaintiff, as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Ms. Barrie hired Worldwide Transportation Experts, Inc. d/b/a Fritz Moving Company d/b/a Lancaster Moving & Storage, Inc. ("Fritz Moving") to move her belongings. Fritz Moving had performed a prior move for plaintiff without any problems. (See Apr. 18, 2008 Barrie Dep., Fritz Moving Mat. Facts, Ex. D (hereinafter "Apr. 18, 2008 Barrie Dep.), 110.) At the time of the move, Barrie shared her one-bedroom apartment with three other individuals: Ms. Jeneba Sannoh, Ms. Salmata Bah and Ms. Alice Jones. Throughout her deposition testimony and in her other statements in the record, plaintiff alternately refers to these women as her "sisters" or her "cousins," though the women are not her relatives. All three women moved with her to her new house.

All of her roommates, like plaintiff, are from Sierra Leone. They speak the same native language, which is not English. She described them as "close family friends." (See Aug. 5, 2005 Barrie Dep., 12-13.) Barrie has also testified that she takes care of these women, "like a sister," paying for their food and allowing them to live with her. (Id. at 16.) Ms. Barrie claimed Salmata Bah as a dependent on her 2004 Federal Income Tax Return, describing her as a "foster child." (See July 13, 2006 Barrie Dep., 48.) No one has been able to locate the three women in connection with this case. (See, e.g., Great Northern Mat. Facts, Ex. O, 28-29.)

Plaintiff's most valuable possession, her jewelry collection, was packed inside a wooden box and in a Samsonite case kept in Ms. Barrie's dresser in the bedroom of the apartment. According to plaintiff, she instructed the movers, Lamar Key and James

Adams, to leave her case and jewelry box in the bedroom. Lamar Key, however, has testified that Ms. Barrie did not give him this instruction. (See Key Dep., May 16, 2008, Great Northern Reply Br. (hereinafter "Key Dep."), Ex. R, 15.)[3] On the day of the move, plaintiff, Ms. Sannoh and Ms. Bah were in the apartment with Key and James the entire time the move was taking place. Plaintiff stated that her roommates packed the boxes with her for her move, and that noone else was present while they were packing. (See Great Northern Mat. Facts, Ex. I, Barrie Aug. 5, 2005 Oral Examination (hereinafter "Aug. 5, 2005 Statement," 160-107.) At some point during the move, plaintiff testified that she and one of the other women present fell asleep on the couch. (Id. at 126.). Ms. Sannoh was in the bedroom with the two movers while they worked, and while Ms. Barrie was asleep. (Id. at 127.)

Upon completion of the move, Barrie paid the movers, tipped them and signed a Property Damage Evaluation and Exception Report which attested to her receipt of the property in good condition. (See Barrie Dep., Aug. 15, 2005, Great Northern. Mat. Facts, Ex. P (hereinafter "Aug. 15, 2005 Barrie Dep."), 46, 54; Great Northern Mat. Facts, Ex. Q.)

Plaintiff contacted the Reading police department four days after the move, on March 2, 2005, and claimed that Fritz Moving had either lost or stolen her property.

---

[3] The deposition of Lamar Key took place on May 16, 2008, after the defendants filed motions for summary judgment. As both plaintiff and Great Northern referred to the deposition in their moving papers, I will consider it part of the record for summary judgment purposes.

Officer Jacquelyn Flannigan and Corporal Andrew Shearer investigated plaintiff's allegations. On March 23, 2005, plaintiff provided a list of the items allegedly stolen. The police attempted to arrange for plaintiff to take a polygraph test, but none was ever taken. The case was closed on March 2, 2006 due to inactivity. (See Fritz Moving Mat. Facts, Ex. E.)

B.    Chubb Masterpiece Insurance Policy

As of February 26, 2005, Barrie held an insurance policy, issued by Great Northern (Chubb Masterpiece Policy No. 12075033-01 to Aissatou Duberry a/k/a Aissatou Barrie, Great Northern Mat. Facts, Ex. B (hereinafter "insurance policy" or "policy")), providing itemized coverage in the total amount of $ 82,425.00 for sixty-four listed items of jewelry. On March 2, 2005, four days after the move and before she reported the jewelry missing to the police, Barrie reported a claim for loss of scheduled jewelry under the policy (Great Northern Mat. Facts, Ex. C.) In her Sworn Statement in Proof of Loss, Barrie indicates the jewelry was stolen by Fritz Moving Company, and claims the policy limit. (Great Northern Mat. Facts, Ex. K.)

Under the policy, Great Northern reserved the right to examine under oath the holder, along with family members and any other members of the holder's household. (See Great Northern Mat Facts, Ex. B Y-5.) The same provision also allows Great Northern to ask for a signed description of the loss and the holder's interest in it, and for other records and documents. (Id.) In the event of concealment of fraud, the policy states

4

that coverage will not be provided if the holder or any covered person "has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." (Id. at Y-1.)

On the day that plaintiff submitted her claim, Stephanie Womack, an adjuster in the Eastern Claim Service Center, took a recorded statement by telephone from Ms. Barrie. In the recorded statement, Ms. Barrie stated the following: (1) after the movers arrived at her apartment, she was laying on her couch with her "little sister;" (2) after the movers moved her packed boxes, Barrie went into her bedroom and noticed that the jewelry was gone; (3) she had intended to carry the boxes herself; (4) she asked one of the movers where the box was and he told her that he put it in the corner of the bedroom; (5) when she checked that location, the jewelry was not there; (6) she left the apartment without locating the jewelry; (7) at the house, she asked the movers again where the jewelry was, and received the same response; and (8) she then returned to the apartment to look again, but was unsuccessful. Ms. Barrie only reported the jewelry missing to the police after Ms. Womck suggested that she do so.

On March 3, 2005, Marie Loughran of Great Northern spoke to Barrie about her claim. Ms. Loughran's notes show that Ms. Barrie told her that she did not look for the jewelry boxes in the apartment. (See Great Northern Mat. Facts, Ex. D.) Ms. Womack then referred the claim to the Special Investigations Unit for further investigation, a task assigned to special investigator Daniel Jaeger. Mr. Jaeger contacted plaintiff by letter on

5

March 7, 2005 to arrange a recorded statement on March 17, 2005.  The two met in her home on that date for two to two and one-half hours.

In her March 17, 2005 recorded statement, Ms. Barrie states: (1) she fell asleep on the living room couch while the movers worked in her bedroom; (2) when she awoke, the movers were in the bedroom, but all of the boxes had been moved out; they were dismantling her bed; (3) she asked where the jewelry was, and they told her they had put it on the side of the bedroom; (4) she looked for the boxes but could not find them; (5) nevertheless, she left with the movers without the jewelry.  (See Great Northern Mat. Facts, Ex. E, 50-58.)

On May 16, 2005, plaintiff gave another recorded statement to a representative of Markel Insurance Company, which insured Fritz Moving.  (See Great Northern Mat. Facts, Ex. F.)  In that statement she claims: (1) she awoke from her nap and went into the bedroom to ask the mover "where is that box," and the mover responded, "your time is going down, let's go"  (id. at 8.); (2) she asked again and the mover stated "on the side" in the bedroom (id.); (3) she did not check for the box at that time because the movers were rushing her.  (Id. at 8-9.)  Mr. Jaeger also interviewed Lamar Keys, who had put the jewelry in the bedroom.  (See Great Northern Mat. Facts, Ex. O, 18-19.)  Mr. Jaeger did not find Ms. Barrie's version of the loss credible, and referred the claim to the law firm of Cozen O'Connor to conduct Ms. Barrie's oral examination under oath.  (Id. at 14-15.)

On August 5, 2005, Ms. Barrie testified at her deposition that she asked the movers

about the jewelry boxes after they had left the apartment and were at Sam's Club picking up a refrigerator. (See Aug. 5, 2005 Barrie Dep., 152-56.) She denied having asked the movers about the jewelry before leaving the apartment. (Id. at 212.) When asked about the inconsistent statement in her March 17, 2005 recorded statement (that she asked about the jewelry while still at the apartment), she responded, "No. That is all a lie." (Id. at 213-14.)

      Ms. Barrie's three roommates did not appear for the oral examination, though at the time all three of the roommates lived with Ms. Barrie in her new home. On July 13, 2006, Barrie gave a second oral deposition, in which she testified that she could not locate any of her "sisters," and had had no contact with any of them since they moved out of her house. (See Barrie Dep, July 13, 2006, Great Northern Mat. Facts, Ex. J (hereinafter "July 13, 2006 Barrie Dep."), 54.) On April 17, 2008, Ms. Barrie testified in another oral deposition that she attempted to locate her "sisters" by talking to "people." (See Apr. 17, 2008 Barrie Dep., 13-16.) She did not identify to whom she spoke in this effort. (See id.) Despite using standard investigative tools to locate Ms. Barrie's roommates, Mr. Jaeger was unable to find them. (See Great Northern Mat. Facts, Ex. O, 28-29.)

      Mr. Jeager also investigated Ms. Barrie's financial condition at the time of the loss of her jewelry. In her original statement to him, she denied having financial problems. (See Great Northern Mat. Facts, Ex. E, 28.) She stated at that time that her three "sisters" all paid rent for living in her new house. (Id.) In her August 5, 2005 deposition, she

stated that her "cousins" give her four hundred dollars ($400.00) each.  (See Aug. 5, 2005 Barrie Dep., 56.)  In her July 13, 2006 deposition, Barrie testified that, with the exception of one $400.00 payment from one "sister," she received no rent from the three women.  (See Jul. 13, 2006 Barrie Dep., 61-63.)  Ms. Barrie's rent at the apartment was $540.00 per month, she took out two mortgages to purchase her new home, and her combined mortgage obligation was $1,655.57 per month.  (See Aug. 5, 2005 Barrie Dep.)  In February 2005, after purchasing the Dunham Street property, Ms. Barrie was fired from her job at the Montgomery County Geriatric Center.  (See Jul. 13, 2006 Barrie Dep., 163.)

On November 21, 2006, Great Northern Insurance Company disclaimed coverage under the concealment or fraud provision of the policy.  (See Great Northern Mat. Facts, Ex. N.)

C.     Procedural Posture

Plaintiff's Complaint states a breach of contract claim against Fritz Moving (Count I), and a breach of contract and bad faith claim against Great Northern (Counts II and III).  The parties engaged in mediation efforts, which were ultimately unsuccessful.  Defendants have now moved for summary judgment.

II.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  <u>Id.</u>

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  <u>Id.</u> at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Defendant Fritz Moving: Breach of Contract

To succeed on her breach of contract claim, plaintiff must prove: (1) the existence of a contract, including its essential terms, (2) defendant's breach of a duty imposed by the contract, and (3) resultant damages. See, e.g., Williams v. Nationwide Mutual Ins. Co., 750 A.2d 881 (Pa. Super. 2000).

Plaintiff has failed to produce any evidence raising a reasonable inference that defendant or any of its agents could be responsible for the loss of her jewelry. She signed a release after the move was complete, stating that nothing was lost. Nevertheless, she continues to rely on her own unsubstantiated and uncorroborated allegation that it must have been the movers who stole her jewelry. This is insufficient as a matter of law under Rule 56(e). See Fed. R. Civ. P. 56(e)(2) ("[plaintiff] may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") Plaintiff carries the burden of proof on each element

of her claim, and the established facts make it no more likely that Fritz Moving stole her jewelry than did one of the mysterious "sisters," whose accounts are conspicuously absent from the record.  I have also considered the deposition of Lamar Key, one of the two Fritz Moving employees present on the day of the move, affirmatively denying plaintiff's allegations.  In light of the paucity of the record, I must grant summary judgment in favor of Fritz Moving, and dismiss Count I of the Complaint.

B.     Defendant Great Northern: Breach of Contract and Bad Faith

     *1.     Plaintiff's breach of contract claim*

The parties agree that plaintiff is disputing defendants' right to void the subject policy under the "concealment or fraud" provision found therein.  An insurer must establish three elements to void a policy based on fraudulent misrepresentation: (1) a representation that the insured made was false, (2) the insured knew the representation was false, and (3) the representation was material to the risk being insured.  See, e.g., Lotman v. Security Mutual Life Ins. Co., 478 F.2d 868, 870 (3d Cir. 1973).

Great Northern based the decision to deny benefits in part on the fact plaintiff had not made her three roommates available for questioning as members of her household under the terms of the insurance contract.  Indeed, her statements as to their relationship to her, the length of time they stayed with her, the amount of support they received from her, and their whereabouts at any time after leaving her home, prove vague and often contradictory.  A case in point is plaintiff's most recent deposition in which she stated

that she had looked for her former roommates by asking "people." She provided no names, no leads, no information whatsoever as to the whereabouts of these material witnesses. Her deposition testimony is also notably contradictory on the strength of her relationship with her one-time "sisters" and financial dependents.[4] More recently, she has testified that she hardly knew them.

The insurance contract reserves to Great Northern the right to take the oral depositions of all members of Ms. Barrie's household, which would include the three women living with her on the day of the move. Two of the sisters were in the apartment during the move, while Ms. Barrie was allegedly asleep on the couch. Ms. Shannoh was even in the bedroom with the movers and the jewelry at this time.

The record is indisputable on one decisive point: Ms. Barrie's testimony concerning the whereabouts of her roommates smacks of an obstinate, wholly unnecessary (and consequently rather suspicious) refusal to cooperate. To survive summary judgment, she must come forward with facts to show that Great Northern lacked

---

[4] I am mindful of plaintiff's assertion that the limits of her command of English, particularly the meaning she ascribes to the word "sister" in this context, should not unfairly undermine her claims. I have taken her point into account in my consideration of the record; however, her testimony as to the closeness of her relationship to these women is sufficiently embellished by her statements that they are "not real cousins" but "close family friends." (See, e.g., Apr. 18, 2008 Barrie Dep. 110). I do not find that her sentiments lend themselves to multiple interpretations due to a language barrier; they are quite clear and are restated in several alternative formulations throughout her testimony. Independent of her own testimony, plaintiff claimed at least one of the women as a dependent on a federal tax return. Her actions indicate at least a relationship of financial dependence, in addition to her own statement that she took care of the women living with her in her apartment.

grounds to void the insurance contract under the concealment provision. On the contrary, her own conflicting statements regarding the involvement and current location of her three roommates indicates that at least part of her testimony is comprised of material misrepresentation.  No reasonable jury could find otherwise when the plaintiff herself has given contradictory accounts, under oath, regarding this material issue.  I must therefore grant the motion for summary judgment as to plaintiff's breach of contract claim against Great Northern.

   2. *Plaintiff's bad faith claim*

   To succeed on her bad faith claim under 42 Pa. Cons. Stat. § 8371, plaintiff must show that (1) the insurer lacked a reasonable basis for denying benefits, and (2) the insurer knew or recklessly disregarded its lack of reasonable basis.  See <u>Klinger v. State Farm Mutual Automobile Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997).  Ms. Barrie must prove both elements of her bad faith claim by clear and convincing evidence.  See <u>Polselli v. Nationwide Mutual Fire Ins. Co.</u>, 23 F.3d 747, 750 (3d Cir. 1994).

   Having found that Great Northern had a reasonable basis as a matter of law for denying benefits under the concealment provision, I need not undertake an in-depth analysis of Ms. Barrie's claim.  Her version of the loss claimed is not only implausible, but it is also wanting in support.  Ms. Barrie's own testimony works against her, as she has failed to tell a consistent story as to several material issues leading up to the disappearance of her jewelry.  For example, plaintiff gave several conflicting reports

concerning when she asked the movers about the jewelry, and whether or not she went back to the apartment to search for it. At one point, plaintiff even admits that her earlier testimony on this issue was "a lie." Even taking into account plaintiff's status as a non-native English speaker, her testimony demonstrates an awareness on her part that at least one of her statements was untrue. With the heightened evidentiary standard of proof by clear and convincing evidence, plaintiff was required to furnish substantially more, and substantially more reliable evidence in order to survive summary judgment. I will therefore grant defendant Great Northern's motion as to plaintiff's bad faith claim.

### IV. CONCLUSION

In light of the foregoing, I will grant summary judgment in favor of defendants. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AISSATOU BARRIE,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | **NO. 06-5320** |
| | : | |
| **GREAT NORTHERN INSURANCE** | : | |
| **COMPANY, et al.,** | : | |
| Defendants | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 28th day of August, 2008, upon consideration of the motions for summary judgment by defendants Fritz Moving Company, Inc. (Document #49), Great Northern Insurance Company (Document #50), and Prudential Insurance Brokerage, Inc. (Document #52), it is hereby **ORDERED** that the motions are **GRANTED** as to each count of plaintiff's Complaint.

The Clerk of the Court is directed to mark this case **CLOSED** for all purposes.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISSATOU BARRIE, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-5320 |
| | : | |
| GREAT NORTHERN INSURANCE | : | |
| COMPANY, et al., | : | |
| Defendants | : | |

### ORDER OF JUDGMENT

**STENGEL, J.**

**AND NOW**, this 28th day of August, 2008, in accordance with my Order granting the defendants' motions for summary judgment, and in accordance with Federal Rule of Civil Procedure 58, judgment is hereby entered on behalf of defendant Fritz Moving Company, Inc., defendant Great Northern Insurance Company, and defendant Prudential Insurance Brokerage, Inc., and against the plaintiff.

BY THE COURT:


  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.